**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
        ltfisher@bursor.com
        swestcot@bursor.com
        apersinger@bursor.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REBECCA HEIKKILA, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>        v.<br><br>SUJA LIFE, LLC,<br><br>                              Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Rebecca Heikkila ("Plaintiff" or "Heikkila") brings this action on behalf of herself and all others similarly situated against Suja Life, LLC ("Defendant" or "Suja").  Plaintiff makes the following allegations based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

<u>**NATURE OF THE ACTION**</u>

1.     This is a class action lawsuit related to Defendant's false claims that its fruit and vegetable juice products, Suja Classic[1] and Suja Fresh Start[2] (the "Juice Products"), are "Raw." However, Defendant's Juice Products are not "Raw," as they undergo a treatment process known as High Pressure Processing ("HPP"), which neutralizes the benefits of the live enzymes, probiotics, vitamins, proteins, and nutrients that would otherwise be retained in raw and unpasteurized juice.  Defendant misrepresents its Juice Products as "Raw" in an effort to appeal to health-conscious, raw-juice-drinking consumers.  By doing so, it is able to charge a significant price premium – roughly double the price of similarly sized, but properly labeled, HPP-treated juice products.

2.     Raw juices are a specific category of fruit and vegetable juices that are extracted in a manner designed to retain as many nutrients and live enzymes as possible.  Because raw juices are unpasteurized and untreated, they must be consumed within days of their production.  This short lifespan, in conjunction with the premium ingredients, makes raw juice quite expensive. Nonetheless, more and more consumers specifically seek out and pay the premium for raw juice because of the health benefits that live enzymes, probiotics, nutrients, and vitamins offer over conventional, pasteurized juice.

3.     Defendant labels and advertises the Juice Products as "Raw" (the "Express Warranty" or the "Misrepresentation").  Moreover, the labeling and advertising of the Juice Products further represents that they are "raw, cold pressed, never heated."

---

[1]     Defendant currently offers ten Suja Classic juices: (i) Fiji; (ii) Fuel; (iii) Glow; (iv) Green Supreme; (v) Lemon Love; (vi) Master Cleanse; (vii) Purify; (viii) Spark; (ix) Twelve Essentials; and (x) Vanilla Cloud.

[2]     Suja Fresh Start is a 1-Day, 2-Day, or 3-Day juice cleanse program that simply uses the Suja Classic juices.

4.      Defendant's Misrepresentation is false and misleading.  The Juice Products are not "Raw."  The effects of HPP on the Juice Products are identical to those of traditional pasteurization – inactivated enzymes, inactivated probiotics, altered physical properties of the product, and denatured proteins, among other undesirable qualities.  As a result of Defendant's use of HPP, its Juice Products are nothing more than run-of-the-mill, processed juices, and fail to provide the same nutrients, enzymes, and vitamins that the products have prior to being subjected to HPP.  This results in juices that purport to be "Raw" yet lack the characteristics and qualities traditionally associated with such products.

5.      Due in part to their false belief that Defendant's Juice Products were "Raw," consumers were willing to pay a premium of $5 to $7 more per bottle for Defendant's Juice Products over properly-labeled pasteurized juices.

6.      Defendant would not be able to charge a premium for its Juice Products without its false and misleading representation about the nature of the products.

7.      Plaintiff seeks relief in this action individually, and on behalf of a nationwide class of purchasers of the Juice Products for violation of the Magnuson Moss Warranty Act, breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, and on behalf of a California Subclass for violation of California's Consumers Legal Remedies Act, violation of California's Unfair Competition Law, and violation of California's False Advertising Law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Plaintiff, as well as most

1  members of the proposed class, is a citizen of a state different from the states of Defendant. In

2  2013, Suja recorded $18 million in revenue from sales of its Juice Products.[3]

3      10.    This Court has personal jurisdiction over Defendant because Defendant conducts

4  substantial business within California, such that Defendant has significant, continuous, and

5  pervasive contacts with the State of California.

6      11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the challenged

7  mislabeling, misbranding, and marketing practices have been disseminated and committed in this

8  District and because Defendant is subject to personal jurisdiction in this District.

9                                    **THE PARTIES**

10     12.    Plaintiff Rebecca Heikkila is a citizen of California, residing in San Francisco,

11  California, where she is an artist. During the class period, Plaintiff Heikkila purchased 16-ounce

12  bottles of Defendant's Juice Products for approximately $8.99 per bottle from a store in San

13  Francisco County for her personal consumption. For example, in August 2013, Plaintiff Heikkila

14  purchased Defendant's "Twelve Essentials" and "Fiji" Juice Products for $8.99 each. Prior to her

15  purchase of the Juice Products, Ms. Heikkila reviewed Suja's website, packaging, and labeling.

16  The containers she purchased represented that Defendant's Juice Products were "Raw." The

17  containers also stated that "Suja juice drinks are raw, cold pressed, never heated." Plaintiff

18  Heikkila saw this representation prior to and at the time of purchase, and understood it as a

19  representation and warranty that the Juice Products she purchased were, in fact, "Raw." She relied

20  on this representation and warranty in deciding to purchase the Juice Products at a premium price.

21  Accordingly, this representation and warranty was part of the basis of the bargain, in that she

22  would not have purchased the Juice Products had she known that the Juice Product were, in fact,

23  not "Raw." In reliance on this representation and warranty, she paid a tangible increased cost for

24  the Juice Products, which were worth less than represented because the Juice Products were, in

25  fact, equivalent to pasteurized juices. She also understood that in making the sale, her grocery

26  store was acting with the knowledge and approval of the Defendant and/or as the agent of

27  ────────────

28  [3]    *See* http://www.forbes.com/sites/jjcolao/2014/01/22/suja-juice-the-unlikely-team-thats-building-the-countrys-fastest-growing-beverage-company/.

Defendant.  She further understood that the purchase involved a direct transaction between herself and Defendant, because the purchase came with Defendant's representation and warranty that the Juice Products were, in fact, "Raw."

13.     Defendant Suja Life, LLC is a Delaware company with its principal place of business located at 8380 Camino Santa Fe, San Diego, California 92121.

14.     Defendant markets and sells its Juice Products widely throughout California, New York, and other states.  Defendant has manufactured, marketed, and sold the Juice Products using the deceptive, false, and misleading claim described herein since at least 2012.  Plaintiff reserves her right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.  The Raw Food Movement

15.     Raw foodism is a relatively new diet movement known for its health benefits.  The movement focuses on the consumption of foods with living enzymes, probiotics, and nutrients to help humans fully digest food without relying on their own digestive enzymes.

16.     As the name suggests, consumption of "raw" foods is vital to the raw food movement.  "Raw" foods are usually organic foods that are unprocessed, uncooked, and not decontaminated to maintain the presence of enzymes, probiotics, and other qualities in their original state.  Raw foods are favored over otherwise denatured or processed food for two reasons.  First, the treatment process destroys or alters many of the enzymes, nutrients, and vitamins found in food.  Second, raw foodists believe that foods without a significant amount of active enzymes take longer to digest and thus clog up the digestive system and arteries with partially digested fats, proteins, and carbohydrates.

17.     "Raw" foods and juices cannot be pasteurized.  This is because pasteurization preserves and sterilizes by substantially reducing the live, active enzymes that are the essence of raw foods.  Accordingly, truly "Raw" products typically have a shelf life of five days or less.  As a

result of their short shelf life and production costs, to be commercially viable, these juices sell for a substantial premium compared to the average 100% pasteurized juices.

18.    To capture part of the ever-growing market for raw juice products, Defendant prominently labels and markets the Juice Products as "Raw."  In doing so, it is able to charge a substantial amount – upwards of $10 for 16 ounces – for its Juice Products.[4]  Surprisingly, Defendant's Juice Products, unlike other raw and unpasteurized juices on the market, have a considerably longer shelf life of about 30 days.  This remarkable (for the industry) shelf life is because Defendant uses HPP to treat its Juice Products.

**B.  The Effect of HPP**

19.    This artificial extension of the lifespan of the Juice Products violates the fundamental principles underlying the raw food movement, consumers' expectations, and industry standards.  Without such manipulation, Defendant's Juice Products would be, like all truly raw and unpasteurized juices, extremely vulnerable to spoliation and degradation.  However, such stability and longevity comes at a price.

20.    A direct and unavoidable result of the use of HPP is the destruction of the enzymes, nutrients, probiotics, and minerals that, but for HPP, would be found in the Juice Products.  As such, the Juice Products being sold to consumers have less nutritional value and corresponding health benefits than otherwise non-HPP-treated and unpasteurized juices that are truly Raw.

21.    HPP is an alternative to traditional, thermal pasteurization of food that decontaminates and preserves food products through the use of high pressure.  HPP has a detrimental effect on food and juice products.  Specifically, the HPP process "may inactivate enzymes and or alter the physical properties of the food material (e.g., denature structural proteins or densify texture)."[5]  Furthermore, HPP "may also cause greater levels of protein denaturation and

---

[4]    "New technologies such as HP[P] can allow producers to create new markets not possible with old technologies and such benefits are only now being explored. Consumers are generally willing to pay more for greater perceived value." Eammon Hogan, Alan L. Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An Overview in Effect of High Pressure of Food Quality, 25 (2005).

[5]    Margaret F. Paterson, Mark Linton & Christopher J. Donna, Introduction to High Pressure Processing of Food in High Pressure Processing of Food, 3 (2007).

other potential detrimental changes in food quality that could affect the appearance of and texture of food, compared to the unprocessed product."[6]   As such, it is undeniable that HPP-treated foods are not identical pre- and post-treatment.  Consequently, foods that are HPP-treated cannot be considered raw.

### C.  Defendant's False & Misleading Packaging and Labeling

22.   Defendant represents on the front of each label that its Juice Products are "Raw" juices:



This is false and misleading.  Juice is Raw only if it contains *all* of the same enzymes, nutrients, probiotics, vitamins, and minerals as the fruits and vegetables had prior to being juiced.  However, that is not the case with the Juice Products.  As discussed above, in the course of sterilizing and extending the shelf life of the Juice Products, HPP also causes the destruction of desirable enzymes, probiotics, nutrients, and vitamins contained in the juices.  Thus, once the Juice Products are subjected to HPP, some of the enzymes, nutrients, vitamins, probiotics, and minerals contained in the pre-HPP Juice Products are no longer present.  As such, Defendant cannot truthfully market the Juice Products as "Raw" when, in reality, the pre-HPP and post-HPP juices are not identical.

---

[6]     Eammon Hogan, Alan L. Kelly, & Da-Wen Sun, High Pressure Processing of Foods: An Overview in Effect of High Pressure of Food Quality, 16 (2005).

23. The false and misleading representation that the Juice Products are "Raw" is reinforced by Defendant's representation that the Juice Products are also "Cold-Pressed." Cold-Pressed, as that term is generally understood by consumers, has a special meaning among raw foodists, namely that the juices are extracted in a manner designed to retain as many benefits of the actual fruits and vegetables as possible. Accordingly, the term "Cold-Pressed," when viewed in the context of the Juice Products' label as whole (i.e., "Organic Raw & Cold-Pressed") serves to corroborate and reinforce consumers' beliefs that the Juice Products are indeed "Raw."

## CLASS ACTION ALLEGATIONS

24. Plaintiff Heikkila seeks to represent a class defined as all persons in the United States who purchased the Juice Products for personal or household use, excluding those who purchased the Juice Products for resale (hereafter, the "Class").

25. Plaintiff Heikkila also seeks to represent a subclass defined as all members of the Class who purchased Juice Products within the State of California (the "California Subclass").

26. Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and the California Subclass number in the millions. The precise number of Class and Subclass members and their identities are unknown to Plaintiff at this time but may be determined through discovery of Defendant's records. Class members may be notified of the pendency of this action by mail, email, and/or publication through the distribution records of Defendant and third party retailers and vendors.

27. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. These common legal and factual questions include, but are not limited to:

    a. Whether Defendant violated the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*;

    b. Whether Defendant breached an express warranty made to Plaintiff and the Class;

    c. Whether Defendant breached an implied warranty made to Plaintiff and the Class;

    d. Whether Defendant was unjustly enriched by its conduct;

e.  Whether Defendant advertised or marketed the Juice Products in a way that was false or misleading;

f.  Whether Defendant's conduct was false, misleading, or reasonably likely to deceive ordinary consumers;

g.  Whether Class members have been injured by Defendant's conduct;

h.  Whether Class members suffered an ascertainable loss as a result of Defendant's Misrepresentation; and

i.  Whether Class members are entitled to damages, restitution, injunctive relief, and/or monetary relief and, if so, the amount and nature of such relief.

28.  Plaintiff and members of the California Subclass have questions of fact and common law to them that predominate over any questions affecting only individual members of the California Subclass.  These common questions include:

a.  Whether Defendant violated California Civil Code §§ 1750, *et seq.*;

b.  Whether Defendant violated California Business & Professions Code §§ 17200, *et seq.*;

c.  Whether Defendant violated California Business & Professions Code § 17500; and

d.  The appropriate measure of damages to be received by Plaintiff and the California Subclass.

29.  The claims of the named Plaintiff are typical of the claims of the Class in that Plaintiff (a) was exposed to Defendant's false and misleading packaging, marketing, and promotion of the Juice Products; (b) relied on Defendant's Misrepresentation; and (c) suffered a loss as a result of her purchases.  Each Class member was subjected to the same conduct, was harmed in the same way, and has claims for relief under the same legal theories.

30.  Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

31.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation Of The Magnuson-Moss Warranty Act ("MMWA"),**
**15 U.S.C. §§ 2301, *et seq.***

32.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

33.    Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

34.    The Juice Products are consumer products as defined in 15 U.S.C. § 2301(1).

35.    Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

36.    Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5).

37.    In connection with the sale of the Juice Products, Defendant issued a written warranty as defined in 15 U.S.C. § 2301(6), by making the express warranty that the Juice Products were "Raw."

38.    In fact, the Juice Products do not conform to the Express Warranty because the Express Warranty is false and misleading in that the Juice Products are subjected to HPP, thus rendering them not "Raw," in contradiction to the representations on the product packaging.

39. By reason of Defendant's breach of the Express Warranty, Defendant violated the statutory rights due Plaintiff and Class members pursuant to the MMWA, thereby damaging Plaintiff and Class members. 15 U.S.C. §§ 2301, *et seq*.

40. Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Juice Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price premium for the Juice Products based on Defendant's Express Warranty; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.

41. Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendant's breach of warranty, which either constitute the full purchase price of the Juice Products or the difference in value between the Juice Products as warranted and the Juice Products as sold. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class in connection with the commencement and prosecution of this action.

## COUNT II
### Breach Of Express Warranty

42. Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

43. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

44. In connection with the sale of the Juice Products, Defendant issued a written Express Warranty. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that the Juice Products were fit for their intended purpose as raw juices by making the Express Warranty to Plaintiff and the Class.

45. Defendant's Express Warranty, its affirmations of fact and promises made to Plaintiff and the Class regarding the Juice Products, and its descriptions of the Juice Products

contained in advertisement and on product labeling and product packaging became part of the basis of the bargain between Defendant and Plaintiff and the Class, thereby creating an express warranty that the Juice Products would conform to those affirmations of fact, representations, promises, and descriptions.

46. The Juice Products are, in fact, not "Raw" because the products undergo a treatment process known as HPP which neutralizes the benefits of the live enzymes, vitamins, and nutrients that would otherwise be retained in a raw juice.

47. Plaintiff and members of the Class were injured as a direct and proximate result of Defendant's breach because (a) they would not have purchased the Juice Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price premium for the Juice Products based on Defendant's Express Warranty; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised. As a result, Plaintiff and the Class members have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## COUNT III
### Breach Of The Implied Warranty Of Merchantability

48. Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

49. Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

50. Defendant is and was at all relevant times a "merchant" within the meaning of the Uniform Commercial Code ("UCC"). Defendant manufactured, distributed, and marketed the Juice Products, which are "goods" within the meaning of the UCC. Consequently, Defendant impliedly warranted that the Juice Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on their container or labels. However, each of these implied warranties

CLASS ACTION COMPLAINT

11

1  was false with respect to the goods of the kind sold to Plaintiff and members of the Class and

2  Subclass.

3        51.   In reliance upon Defendant's skill and judgment and the implied warranties of

4  fitness for the purpose, Plaintiff and Class members purchased the Juice Products for the purpose

5  of consuming juices that were raw.

6        52.   The Juice Products were not altered by Plaintiff or Class members.

7        53.   The Juice Products were defective when they left the exclusive control of

8  Defendant.

9        54.   Defendant knew the Juice Products would be purchased and consumed by Plaintiff

10  and Class members without additional testing for nutritional value.  The Juice Products were unfit

11  for their intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

12        55.   More specifically, Defendant breached its implied warranty of merchantability to

13  Plaintiff and the Class because the Juice Products would not pass without objection in the trade

14  because they were incapable of performing the functions they were intended to perform.  They are

15  not "Raw" and do not have the benefits of the live enzymes, vitamins, and nutrients that are present

16  in raw juices.

17        56.   As a direct and proximate cause of Defendant's breach of the implied warranty,

18  Plaintiff and Class members were injured because (a) they would not have purchased the Juice

19  Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price

20  premium for the Juice Products based on Defendant's warranty; and (c) the Juice Products did not

21  have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the Class members

22  have been damaged either in the full amount of the purchase prices of the Juice Products or in the

23  difference in value between the Juice Products as warranted and the Juice Products as actually sold.

### COUNT IV
### Unjust Enrichment / Common Law Restitution

24

25        57.   Plaintiff repeats the allegations contained in the paragraphs above as if fully set

26  forth herein

27

28

CLASS ACTION COMPLAINT

58.     Plaintiff brings this claim individually and on behalf of the members of the Class against Defendant.

59.     Plaintiff and Class members conferred benefits on Defendant by purchasing the Juice Products.

60.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of the Juice Products.  Retention of those monies under these circumstances is unjust and inequitable because of Defendant's Misrepresentation about the Juice Products, which caused injuries to Plaintiff and Class members because they would not have purchased the Juice Products if the true facts had been known.

61.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

<u>COUNT V</u>
**Violation Of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code §§ 1750, *et seq.***

62.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

63.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

64.     In violation of Cal. Civ. Code §§ 1750, *et seq.*, Defendant has engaged in unfair and deceptive acts and practices in the course of transactions with Plaintiff and members of the California Subclass.  Such transactions were intended to and did result in the sales of goods to Plaintiff and the California Subclass.  Plaintiff and members of the California Subclass are "consumers" as that term is used in the CLRA because they sought or acquired Defendant's goods or services for personal, family, or household purposes.

65.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by making the Misrepresentation.

66.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or mode, if they are of another."  Defendant violated this provision by making the Misrepresentation.

67.     Cal. Civ. Code § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."  Defendant violated this provision by making the Misrepresentation.

68.     Plaintiff and members of the California Subclass were injured as a direct and proximate result of Defendant's CLRA violations because (a) they would not have purchased the Juice Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price premium for the Juice Products based on Defendant's Misrepresentation; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the California Subclass have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

69.     Plaintiff and members of the California Subclass request injunctive relief enjoining Defendant from engaging in further deceptive acts and practices in relation to the advertising, promotion, and sale of the Juice Products as well as ordering that Defendant conduct corrective advertising.

70.     Prior to filing this Complaint, a notice letter was served on Defendant which complied in all respects with Cal. Civ. Code § 1782(a).  Plaintiff, by and through her counsel, sent Defendant a letter via certified mail, return receipt requested, advising it that it was in violation of the CLRA and that it must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770.  A copy of the letter is attached hereto as Exhibit A.

71.     Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

**COUNT VI**
**Violation Of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, *et seq.***

72.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

73.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

74.     Defendant is subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 1200, *et seq.*  The UCL provides, in pertinent part:  "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

75.     In connection with the sale of its Juice Products, Defendant warranted that its products were "Raw."  Defendant's Juice Products are not raw, as they undergo HPP which neutralizes the benefits of the live enzymes, vitamins, and nutrients that would otherwise be retained in raw juices.

76.     Defendant's conduct, described herein, violated the "unlawful" prong of the UCL by violating the MMWA, the CLRA, and the FAL.

77.     Defendant's conduct, described herein, violated the "unfair" prong of the UCL by violating the policy or spirit of the MMWA, the CLRA, and the FAL.

78.     Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL by making the Misrepresentation.

79.     Plaintiff and members of the California Subclass were injured as a direct and proximate result of Defendant's UCL violations because:  (a) they would not have purchased the Juice Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price premium for the Juice Products based on Defendant's Misrepresentation; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the California Subclass have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

**COUNT VII**
**Violation Of California's False Advertising Law ("FAL"),**
**Calif. Business & Professions Code §§ 17500, *et seq.***

80.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the members of the California Subclass against Defendant.

82.     California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

83.     Defendant committed acts of false advertising, as defined by § 17500, by making the Misrepresentation described herein.

84.     Defendant knew or should have known, through the exercise of reasonable care, that the Misrepresentation was untrue and misleading.

85.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

86.     Plaintiff and the California Subclass members lost money or property as a direct and proximate result of Defendant's FAL violations because: (a) they would not have purchased the Juice Products if they had known that the products were, in fact, not "Raw;" (b) they paid a price premium for the Juice Products based on Defendant's Misrepresentation; and (c) the Juice Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the members of the California Subclass have been damaged either in the full amount of the purchase prices of the Juice Products or in the difference in value between the Juice Products as warranted and the Juice Products as actually sold.

## **PRAYER FOR RELIEF**

87.     WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, seeks judgment against Defendant as follows:

a. For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and California Subclass and Plaintiff's attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff, the nationwide Class, and the California Subclass on all counts asserted herein;

d. For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper;

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees, and expenses;

i. Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j. For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated: February 5, 2014

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By: _____*/s/ L. Timothy Fisher*_____
L. Timothy Fisher

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)
1990 North California Boulevard, Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455

Facsimile:  (925) 407-2700
E-Mail: scott@bursor.com
         ltfisher@bursor.com
         swestcot@bursor.com
         apersinger@bursor.com

*Attorneys for Plaintiff*

I, Rebecca K. Heikkila, declare as follows:

1.    I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.    The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.    While living in California, I purchased Suja juice for personal consumer use.  I read the label for Suja juice, and purchased it in reliance on the claims that Suja was "raw" "and "cold-pressed."  The representations on the label were substantial factors influencing my decision to purchase Suja juice.  I would not have purchased Suja juice had I known that it is not, in fact, raw or cold-pressed.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on January 31, 2014 at San Francisco, California.



REBECCA K. HEIKKILA

**EXHIBIT A**

# BURSOR & FISHER

P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

SCOTT A. BURSOR
Tel: 212.989.9113
Fax: 212.989.9163
scott@bursor.com

September 10, 2013

***Via Certified Mail - Return Receipt Requested***

Suja Life, LLC
7514 Girard Ave
La Jolla, CA 92037

Suja Life, LLC
8380 Camino Santa Fe
San Diego, CA 92121

Re:     *Demand Letter Pursuant to California Civil Code § 1782,*
        *Uniform Commercial Code § 2-607, and other applicable laws.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my clients, Rebecca Heikkila and Yuri Lazarek, and all other persons similarly situated, arising from violations of numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(5), (7), and (9). This letter also serves as notice concerning the breaches of express and implied warranties described herein pursuant to U.C.C. §§ 2-313, 2-314, and 2-607.

You have participated in the manufacture, marketing, and sale of Suja juice products (collectively, "Suja Juice"). The label for each Suja Juice product states that it is "raw." This statement is false and misleading. In fact, Suja Juice products are subjected to a pasteurization process known as high pressure processing ("HPP").

The fundamental principle behind raw foodism, also called rawism, is that plant foods are the most wholesome for the body in their most natural state – uncooked and unprocessed. But Suja Juice is not sold in its most natural state, and it is heavily processed. Suja Juice is subjected to HPP to artificially extend its shelf-life. HPP is a method of preserving and sterilizing food by processing the product under very high pressure. The HPP process is a form of pasteurization that inactivates enzymes and microorganisms. Food that is subjected to HPP cannot be considered "raw."

Ms. Heikkila, a resident of California, purchased Suja Juice on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw." She would not have purchased Suja Juice if she had known that the product was not "raw" because it was subjected to HPP.

Mr. Lazarek, a resident of California, purchased Suja Juice based on representations on the label and in other marketing and advertising materials which state or imply that the product is "raw." He would not have purchased Suja Juice if he had known that the product was not "raw" because it was subjected to HPP.

Ms. Heikkila and Mr. Lazarek are acting on behalf of a class defined as all persons in the United States who purchased Suja Juice (hereafter, the "Class").

Ms. Heikkila and Mr. Lazarek are also acting on behalf of a subclass of Class members who purchased Suja Juice in the state of California (the "California Subclass").

To cure the defects described above, we demand that you (1) cease and desist from further sales of Suja Juice; (2) issue an immediate recall of Suja Juice products; and (3) make full restitution to all purchasers of Suja Juice of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1. All documents concerning product development and production of Suja Juice;

2. All communications with the U.S. Department of Agriculture or the U.S. Food and Drug Administration concerning the product development, manufacturing, marketing, and sales of Suja Juice;

3. All documents concerning the advertisement, marketing, or sale of Suja Juice; and

4. All communications with customers concerning complaints or comments concerning Suja Juice.

We are willing to negotiate to attempt to resolve the demands asserted in this letter. If you wish to enter into such discussions, please contact me immediately. If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation. If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Scott A. Bursor